[No. 34320. Department Two. March 20, 1958.]

NATIONAL BUSINESS & PROPERTY EXCHANGE, INC.,
*Respondent*, v. B. H. SHINOLT, *Appellant*.[1]

*Simmons, Simmons & Yates*, for appellant.

*Whitmore, Vinton & Powers*, for respondent.

DONWORTH, J.—This action was instituted by a California corporation to recover five hundred twenty-five dollars for advertising service furnished to defendant pursuant to a written contract. Defendant's answer denied "each and every allegation, matter and thing" contained in the complaint.

At the close of plaintiff's case, defendant moved for a dismissal on the ground that plaintiff had not proven its corporate existence nor its qualification to do business in this state. After hearing argument on the motion, the trial court reopened the case for the taking of further testimony. Two witnesses were then recalled, and after hearing their testimony the court denied the motion to dismiss.

Defendant offered no testimony in support of his answer, which denied all the allegations of the complaint. Defendant had been called as a witness by plaintiff and had testified prior to the close of plaintiff's case.

[1]Reported in 323 P. (2d) 12.

The court then gave its oral decision, in which it was stated:

"So, I must conclude that the plaintiff is entitled to recover and hold that the plaintiff is not doing business in this State at the present time and therefore does have a legal right to sue."

From the context of this oral opinion, it is clear that the court, in using the words "the plaintiff," was referring to the California corporation.

No motion for a substitution of parties plaintiff was ever made.

Thereafter, without stating any reason for the change in the identity of the plaintiff, the court entered its findings of fact, the first of which stated:

"That plaintiff is a corporation organized and entitled to do business in the State of Delaware, and not qualified to do business in the State of Washington."

Judgment was entered in favor of the Delaware corporation for the sum of five hundred twenty-five dollars plus interest, attorney's fees of two hundred dollars, and costs.

Defendant has appealed, and in several of his assignments of error challenges the use of the words "the plaintiff" in the findings of fact as meaning a Delaware corporation, rather than a California corporation, as named in the complaint. Defendant further asserts that it was error to award judgment to a Delaware corporation on the contract sued on in this case.

In view of the conclusion we have reached, it is not necessary to discuss any questions raised by the assignments of error other than the right of the Delaware corporation to recover on the contract which was the basis of this action.

This contract, headed "Display Service Agreement," was dated March 28, 1956, and was signed by appellant. It is a printed form letter addressed to National Business & Property Exchange, Inc., 5410 Wilshire Boulevard, Los Angeles, California, reading as follows:

"I hereby reserve one-quarter (¼) page of display ad-

vertising space in NATIONAL BUYERS' GUIDE, commencing with your next issue subject to your publication schedule on the reverse side of this Agreement. You will publish in this space an advertisement prepared from the copy which I have approved on the accompanying survey form.

"For such reservation of space, I will pay you the sum of $525.00 at Los Angeles, California, forty-five (45) days from the date of your acceptance of this Agreement. However, if I do enter into an agreement to sell, lease, or exchange this business or property before the expiration of said forty-five (45) day period, I will pay the above mentioned sum immediately. If you commence legal action hereon, I agree to pay, in addition, a reasonable attorney's fee. I understand that you make no guarantee that I shall sell, lease or exchange this business or property.

"This agreement shall become effective only when accepted at your office in Los Angeles, California. You shall notify me of such acceptance by letter.

"This Agreement contains the entire understanding between us and no representation or inducement has been made that is not set forth herein."

In the lower left corner is printed:

"Accepted at Los Angeles, California

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ., 19. . .

NATIONAL BUSINESS & PROPERTY EXCHANGE, INC.

By . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

This acceptance was signed on behalf of the corporation by Homer Kelly (under circumstances hereinafter described) and dated with a date stamp, reading "Mar 30 1956."

At the time this contract was entered into, one Paul E. Kirker, a Seattle resident, had a franchise from the California corporation to solicit advertising for it in the state of Washington. He contacted appellant and obtained his signature on the contract. At that time it happened that Homer Kelly, vice-president of the California corporation, was in Seattle for the purpose of disposing of some office furniture belonging to a Washington corporation of the same name. Mr. Kelly was in Mr. Kirker's office on the day that appellant executed the agreement, and he then signed the acceptance form. The completed document was

mailed to the Los Angeles office, where the National Buyers' Guide is published.

The evidence shows, without dispute, that the advertisement authorized by appellant was published in three consecutive issues of the National Buyers' Guide, which is published monthly in Los Angeles and distributed nationally, reaching thousands of prospective buyers.

Mr. Kirker testified that National Business & Property Exchange was incorporated under the laws of Delaware. He said he knew this from reading the decision of a Federal court in Oklahoma. After the case was reopened for further testimony, Mr. Kirker testified that his business relationship with the National Business & Property Exchange, Inc., had terminated over three months prior to the trial, and that the only corporation he had worked with was *the California* corporation.

The only other witness who testified as to the matter of incorporation in Delaware was a Seattle attorney who formerly handled the local business of National Business & Property Exchange, Inc. He had assisted in organizing a Washington corporation of that name, which was separate from the California corporation. He had also qualified the latter corporation to do business in Washington. This was done three or four years prior to the trial. He testified:

" . . . I subsequently, through contact with my client and association with them, ascertained that the National Business & Property Exchange, Inc. was transferred to Delaware. . . .

"Q. Now, to your knowledge, from any time from March 28th of 1956 to today has the National Business & Property Exchange, Inc. been dissolved? A. I don't know of any other than the information that they had formed a Delaware corporation. I have received a letter to the effect that they have changed the name is all, but it is still the same organization as far as I know."

After the case was reopened, the attorney was recalled, and he testified, in part, as follows:

"Q. That was of the Washington corporation you were just speaking of? A. Or the California corporation, until such time as these franchise operations, Mr. Kirker's or-

ganization was set up. There were either one or two franchise operators prior to him. All set up on a California operation of similar contracts as this. All had to be sent down there for acceptance.

"Frankly, that is the only basis we can see in this State, and in many of the other States where we wouldn't be in a situation of being a foreign corporation doing business within a State. Q. That was the reason the Washington corporation was organized? A. No. That was the reason we had the set-up that the California contract be accepted at Los Angeles whenever the franchise operation was set up. When the Washington corporation was organized we set those up at Seattle, Washington, and required all contracts written in any other States— Q. Did you draft those contracts? A. No, sir, I did not. I assisted in them. A Mr. Herzog, an attorney in Beverly Hills, California, was the incorporator for California, which was the parent corporation."

We have quoted herein all portions of the testimony directly relating to the judgment creditor's incorporation in Delaware. There is also in evidence the certificate of the secretary of state of the state of Washington stating that the California corporation had qualified to do business in this state on April 15, 1952, but had failed to pay its annual license fee to the state of Washington which became due July 1, 1955.

Finding No. 3, which refers to Homer Kelly as vice-president of "plaintiff corporation," is inconsistent with finding No. 1, which finds that plaintiff is a Delaware corporation. There is absolutely no evidence to support that portion of finding No. 3. In finding No. 4, the court found that "said contract has been fully performed by the plaintiff" (Delaware corporation). The admitted and undisputed evidence is that the contract was fully performed by the California corporation. As we see it, the California corporation alleged, and proved, the existence of a contract between it and appellant, the performance of the contract on its part, and appellant's refusal to pay the consideration which he promised therein. There is not a scintilla of evidence that the contract was performed by a Delaware corporation, or that either this cause of action

or the contract on which it is based, was ever transferred or assigned to a Delaware corporation. For aught that appears, the contract is still the property of the California corporation.

Respondent argues that the pleadings must be considered amended to conform to the proof. This well-recognized rule has no application here because, even assuming that the hearsay testimony as to the existence of a Delaware corporation (which was introduced without objection) constitutes sufficient proof as its incorporation in that state, there still is no proof that it ever acquired title to the contract between appellant and the California corporation.

All the allegations of the complaint having been denied by appellant's answer, the burden was upon respondent to prove, not only its capacity to bring this action in the superior court, but also its ownership of the contract upon which the action was based. See *Frye & Company v. Merchants' Transp. Co.*, 118 Wash. 602, 204 Pac. 184 (1922). It failed to prove these vital factors. The evidence showed that the title to the contract was in the California corporation, yet, without any substitution of parties plaintiff, *the Delaware* corporation was awarded judgment for the amount appellant owed thereunder.

The judgment in favor of the Delaware corporation is vacated and the cause remanded for further proceedings not inconsistent with the views expressed herein. The trial court may receive such additional evidence offered by either party as it may deem material to the issue of the present ownership of the contract and the owner's capacity to sue on it in this state.

As to whether either the California corporation or the Delaware corporation is eligible at this time to maintain an action on the contract in the courts of this state, we express no opinion.

Appellant will recover his costs in this court.

It is so ordered.

HILL, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.